MICHELE BECKWITH
Acting United States Attorney
HEIKO P. COPPOLA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:22-CR-161 JAM |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| HEIDI EDWARDS, | COURT: Hon. JOHN A. MENDEZ |
| Defendant. | |

## I.   INTRODUCTION

**A.   Scope of Agreement.**

The indictment in this case charges the defendant with violation(s) of 18 U.S.C. § 1955 – operating an illegal gambling business, 18 U.S.C. § 1956(h) – money laundering conspiracy, and 18 U.S.C. § 1957 – engaging in monetary transactions using criminally derived property. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.   Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

concerning the criminal activities of defendant, including activities which may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II.   DEFENDANT'S OBLIGATIONS

### A.   Guilty Plea.

The defendant will plead guilty to Count One – operating an illegal gambling business in violation of 18 U.S.C. § 1955. The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are true, accurate, and establish the elements of the crime charged beyond a reasonable doubt.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that she will not be allowed to withdraw her plea(s) should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

1.   Package Agreement:

The defendant acknowledges and understands that the plea offer made to her here by the government is a "package offer." That is, the defendant understands that the offer made to him is conditioned on co-defendants James Mecham and Kurt Stocks pleading guilty according to the terms of

his/her respective plea offers. The defendant understands that if any co-defendant declines, refuses or fails to plead guilty according to his/her respective offer, then, at the option of the government, the defendant will not be allowed to enter a plea of guilty to the offer made to her by the government. Additionally, if co-defendants James Mecham or Kurt Stocks fails or refuses to enter his or her plea according to his or her respective offer and the defendant has already entered her plea, then this plea agreement is voidable at the option of the government. In its sole discretion, the government has the ability to withdraw from the plea agreement with the defendant and pursue the original charges as to this defendant. However, the defendant's waiver of her rights under Rule 11(f) and Fed. R. Evid. 410, as set forth in Section II.A herein, will not operate.

Recognizing that this is a package offer, the defendant confirms that she has not been threatened, pressured, or coerced by any other person, including the co-defendant, to enter into this plea agreement. The defendant also confirms that she enters into this plea agreement voluntarily because she is in fact guilty of the offense(s) to which she is pleading guilty.

### B. Fine.

The defendant reserves the right to argue to Probation and at sentencing that she is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is her burden to affirmatively prove that she is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense[s]. Payment shall be by certified or cashier's check to the Clerk of the Court prior to sentencing.

### C. Special Assessment.

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if she fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money

to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**D.      Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).**

If the defendant, cooperating or not, violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice. Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement. The government also shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement. The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law

enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### E.  **Forfeiture.**

The defendant agrees to forfeit to the United States voluntarily and immediately all of her right, title, and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 1955(d), and 28 U.S.C. § 2461(c). Those assets include, but are not limited to, the following:

1. Approximately $117,151.48 seized from Bank of America Account Number 5010 1714 7633,
2. Approximately $43,882.17 seized from Bank of America Account Number 5010 0170 0675,
3. Approximately $4,436.39 seized from Bank of America Account Number 5010 1940 4044,
4. Approximately $60,328.73 seized from Uniwyo Federal Credit Union Account Number 61324, and
5. Approximately $29,438.90 seized from Mechanics Bank Account Number 42073421.

The defendant agrees that the listed assets are forfeitable to the United States as property representing proceeds traceable to, and used in the commission of, violations of 18 U.S.C. § 1955.

The defendant agrees to fully assist the government in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States. The defendant shall not sell, transfer, convey, or otherwise dispose of any of her assets, including but not limited to, the above-listed assets.

The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive her right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

The defendant knowingly and voluntarily waives her right to a jury trial on the forfeiture of assets and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these

PLEA AGREEMENT    5

assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States. The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

### F.   Asset Disclosure.

The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Disclosure Statement" within three (3) weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if she fails to complete truthfully and provide the described documentation to the United States Attorney's Office within the allotted time, she will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above.

Defendant expressly authorizes the United States to immediately obtain a credit report to evaluate defendant's ability to satisfy any monetary penalty imposed by the court. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

### III.   THE GOVERNMENT'S OBLIGATIONS

### A.   Dismissals/Other Charges.

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.D (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Estimated Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

### B.   Recommendations.

1.   Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the

applicable guideline range as determined by the Court.

2. Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

C. Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty, specifically operating an illegal gambling business in violation of 18 U.S.C. § 1955:

First, the defendant conducted, financed, managed, supervised, directed, owned a business consisting of possessing, installing, and maintaining video slot machines and devices and receiving holding, and forwarding money to be staked on the result of online games in California and of non-amusement and regulated gambling in Arizona;

Second, possessing, installing, and maintaining video slot machines and devices and receiving, holding, and forwarding money to be staked on the result of online games  is illegal gambling in California and benefiting from non-amusement gambling is illegal in Arizona;

Third, the business involved five or more persons who conducted, financed, managed, supervised, directed, owned all or part of the business; and

Fourth, the business had been in substantially continuous operation by five or more persons for more than thirty days or had a gross revenue of $2,000 in any single day.

The defendant fully understands the nature and elements of the crimes charged in the indictment to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

## V.     MAXIMUM SENTENCE

### A.     Maximum Penalty.

The maximum sentence that the Court can impose is five (5) years of incarceration, a fine of $250,000, a three (3) year period of supervised release and a special assessment of $100. Violations of Supervised Release.

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two (2) additional years imprisonment.

## VI.    SENTENCING DETERMINATION

### A.     Statutory Authority.

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B.     Estimated Guideline Calculation.

The government and the defendant agree that the following is their present best estimate of the sentencing guidelines variables. These estimates shall not be binding on the Court, the Probation Office,

or the parties:

      1.    Base Offense Level: 12 (USSG § 2E3.1(a)(2)(A) and (C) – engaging in and facilitating a gambling business

      2.    Role in the Offense Adjustment: The parties agree that no role adjustment, either upward or downward is appropriate in this case.

      3.    Adjusted Offense Level: 10

      4.    Acceptance of Responsibility: See paragraph III.B.2 above

      5.    Criminal History: The parties estimate, but do not stipulate, that the defendant's criminal history category will be I.

      6.    Sentencing Range: 6-12 months (The defendant understands that if the criminal history category differs from the parties' estimate, her Guidelines sentencing range may differ from that set forth here.)

      7.    Departures or Other Enhancements or Reductions: The defendant is free to recommend to the Court whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a).

## VII.    WAIVERS

### A.    Waiver of Constitutional Rights.

The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on her behalf; (f) to confront and cross-examine witnesses against her; and (g) not to be compelled to incriminate herself.

### B.    Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence. The defendant agrees as part of her plea(s), however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum for the offense to which she is pleading guilty. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which

defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate her plea(s), dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in Section II.E herein.

C.      **Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed.

VIII.    **ENTIRE PLEA AGREEMENT**

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

///

///

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 05/27/2025

_____
CHRISTINA SINHA
Attorney for Defendant

### B. Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated:

_____
HEIDI EDWARDS
Defendant

### C. Attorney for United States:

I accept and agree to this plea agreement on behalf of the government.

Dated: 5-29-2025

MICHELE BECKWITH
Acting United States Attorney

_____
HEIKO P. COPPOLA
Assistant United States Attorney

5/27/25

EXHIBIT "A"

Factual Basis for Plea(s)

During the time periods charged in the indictment, James Mecham ("Mecham"), Kurt Stocks ("Stocks") and Heidi Edwards ("Edwards") the managed a series of businesses including Abnom, Stuff About Games, SweepsCoach, and Burkiworks ("the SweepsCoach Entities" or "SweepsCoach"), that engaged in and facilitated illegal gambling at locations throughout the United States, including California and Arizona. SweepsCoach was based in El Dorado Hills, California.

Between 2012 and 2015, Mecham was the registered owner and spokesman for the business. Mecham collected the majority of the profits and paid several persons, including Stocks and Edwards, Mecham sold SweepsCoach to Stocks in 2015. However, internal communications reveal that he maintained an active role in the business, frequently engaged Stocks as to the day-to-day operations of the business, and directed Stocks how to divide and disperse the proceeds of the operation to Mecham.

Stocks' initial role was to provide assistance to internet cafes in setting up their online gaming operation which involved travel to café locations in California and Arizona. In 2015, Stocks assumed day-to-day control of the gambling business.

Edwards was hired as an office/business manager by Mecham. Edwards exercised less control over the business than either Stocks or Mecham. In addition to her day-to-day office managerial responsibilities, Edwards communicated directly with internet café owners regarding any technical issues at the internet café and routed those issues to appropriate personnel for resolution. The SweepsCoach gambling operation involved no fewer than eight people between 2012 and 2017.

Mecham, Stocks, Edwards and others, marketed the SweepsCoach gaming operation and entered into agreements with internet cafes for access to the SweepsCoach portal throughout the Eastern District of California and Arizona. Mecham, Stocks, and Edwards and others, helped the cafes set up gaming terminals in California and Arizona and provided technical service. Players used credits to play a slot machine-style game on a video screen and would potentially win additional credits, which could be exchanged for money at the internet café. Internet gambling of this form is illegal under California Penal Code §§ 330(b) and 337a(a)(3) and Arizona Revised Statute § 13-3304.

The internet café operators collected funds, accessed the SweepsCoach website and created customer accounts with an individual identification code where the funds would be recorded as "credits" for use in gambling. At the conclusion of play, the customer either kept the credits or received cash. SweepsCoach clients in California and Arizona would directly deposit the cash owed from the illegal gaming into bank accounts controlled by Mecham, Stocks, and Edwards. Undercover law enforcement operations at several internet cafés in California and Arizona confirmed the use and conduct of SweepsCoach games.

Mecham, Stocks and Edwards established numerous business identities which acted as the lead company and the face of the gaming operations at various periods of the gambling operation. Once established, the entities opened bank accounts to directly receive gaming proceeds from their retail customers. In 2015, Mecham, Stocks, Edwards and others began establishing corporations in several states using "asset preservation service" companies. These companies assisted Mecham, Stocks and Edwards with establishing at least sixteen shell corporations in Nevada and Wyoming for the purposes of receiving the illegal gambling proceeds.

The SweepsCoach Entities maintained various front-line accounts that received deposits, usually cash, directly from internet gambling cafes, at bank branches near the café. From January 1, 2012 through November 7, 2017, approximately $14 million in gaming proceeds was deposited into these accounts. The gross gaming receipts from California and Arizona totaled approximately $11 million, or approximately 79% of gambling proceeds. From the front-line accounts, the gambling proceeds

systematically moved through a web of intermediary accounts designed to introduce separation and obscure any connection to the defendants, who ultimately withdrew the proceeds. Once withdrawn, the funds were used by Mecham, Stocks and Edwards to promote a luxury lifestyle through real estate purchases, vehicle acquisitions, and the maintaining sizable balances in bank accounts under their control. The SweepsCoach Entities utilized over thirty-two (32) bank accounts at nineteen (19) different financial institutions to facilitate the illegal gambling business and launder the proceeds.

The defendants agree that the gambling operation's gross revenue in any single day was $2,000 and that the business was in continuous operation for more than thirty days.

I agree that the foregoing conduct by me constitutes my actions in this case.

Dated: 5/27/25                      _____
                                     HEIDI EDWARDS, Defendant

PLEA AGREEMENT                          A-2